UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:25-cv-937

| | |
|---|---|
| RICK LOWDEN,<br><br>        Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, NA,<br><br>        Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rick Lowden ("Plaintiff") brings this action against Defendant Wells Fargo Bank, N.A. ("Defendant") for violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.§ 12101, et seq., the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. ("ADEA"), the Family and Medical Leave Act of 1993 ("FMLA") and North Carolina state law claims for wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.1.

## PARTIES

1.    Plaintiff Lowden is a resident of Huntersville, North Carolina.

2.    Wells Fargo Bank, N.A., ("Defendant" or "Wells Fargo") is an entity formed under the laws of South Dakota, registered to do business in North Carolina, with an office located at 401 South Tryon Street, Charlotte, North Carolina 28202, where Plaintiff was employed.

3.    Defendant employed Plaintiff during the events giving rise to this action.

1

## JURISDICTION AND VENUE

4. This Court has original jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims under the ADA, ADEA, FMLA and Title VII because the claims arise under the laws of the United States.

5. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in Charlotte, North Carolina, which is located within this judicial district.

6. At all relevant times, Defendant was, and is, an "employer" within the definition of FMLA, 29 U.S.C. § 2611(4)(A) on the basis that it employs more than 50 employees.

7. At all relevant times, Plaintiff was an "eligible employee" within the definition of FMLA, 29 U.S.C. § 2611(2)(A), on the basis that Defendant employed Plaintiff for at least 12 months, and Plaintiff performed at least 1,250 hours of service for Defendant.

8. At all times relevant, Plaintiff was an "employee" covered by the protections of Title VII of the Civil Rights Act of 1964 within the meaning of 42 U.S.C. § 2000e(f).

9. At all relevant times, Defendant was, and is, an "employer" within the definition of Title VII, 42 U.S.C. § 2000e, *et seq.* (specifically, 42 U.S.C. § 2000e(b)) on the basis that it employs more than 15 employees.

10. At all times relevant to this action, Defendant possessed and exercised the power and authority to direct, control, and supervise the work performed by Plaintiff.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was hired to work in this district and Defendant conducts business in this district.

## ADMINISTRATIVE EXHAUSTION

12. Plaintiff filed his Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") on May 29, 2025 alleging age discrimination, disability discrimination, and retaliation.

13. The EEOC issued a Notice of Right to Sue on August 26, 2025.

14. Plaintiff files his complaint within ninety (90) days thereafter.

## GENERAL ALLEGATIONS

15. On November 3, 1986, Plaintiff was hired by a predecessor bank (Fidelity Bank, First Fidelity Bank, and First Union), which was acquired by Wachovia Corporation ("Wachovia").

16. In 2009, Wachovia was bought by Defendant and Plaintiff received a severance agreement for his 23 years of service.

17. Two years later, in March of 2011, Plaintiff was rehired by Defendant as Vice President and Compliance Consultant.

18. On December 16, 2019, Plaintiff's job title was changed to Enterprise Testing Associate.

19. From March 2020 to March 2022, Plaintiff worked from home. During this time, Plaintiff received positive performance evaluations from manager Kelly Walsh ("Walsh"). Plaintiff received meets expectations on all sections.

20. Plaintiff returned to a new office in March of 2022. In June of 2022, Plaintiff received another positive performance evaluation from Walsh, once again receiving meets expectations on all sections.

21. Between September 2022 and December 2023, Plaintiff was being reviewed by a

variety of project leaders and/or supervisors of varying skill levels, geographic location, and tenure with the company.

22. Most, if not all, of the individuals reviewing Plaintiff's performance at this time were much younger than him.

23. Additionally, Plaintiff's job title changed, again, to Independent Testing Specialist.

24. Plaintiff found that there was inconsistency in the feedback he received during this period of great change within the company.

25. On January 2, 2024, Plaintiff began reporting to his new manager, 35-year-old Matthew Haberman ("Haberman").

26. On January 31, 2024, Haberman performed Plaintiff's 2023 annual review in which Plaintiff was given inconsistently meets expectations which contained incorrect, misleading and false information.

27. As a result of the negative performance review, Plaintiff did not receive a bonus.

28. From February 2024 until Plaintiff's mid-year review in June of 2024, Plaintiff met one-on-one with Haberman on a biweekly basis.

29. From May to July of 2024, Plaintiff was scheduled for an exorbitant number of hours in which he was working on different testing reviews with different project leaders and/or supervisors.

30. On October 30, 2024, Plaintiff received an informal warning regarding his job performance, which was completely incorrect, misleading and/or false.

31. On February 24, 2025, Plaintiff received a formal warning, again, with incorrect misleading and false information cited by Haberman.

32. Despite this formal warning, Haberman did not provide Plaintiff with a Performance Improvement Plan (PIP) at any time. In fact, the formal warning states "you are expected to correct the situation outlined, but no specific action plan is required at this time."

33. On March 17, 2025, Plaintiff wrote a letter to Wells Fargo Employee Relations, complaining about the way he was being treated and responded to each allegation made against him by Haberman.

34. Plaintiff noted that Haberman's allegations were inaccurate, misleading, and unsupported.

35. Plaintiff attached multiple documents supporting his claims of age discrimination against his new manager's allegations.

36. Plaintiff restated his willingness to cooperate with his new manager and requested a reconsideration of the corrective action.

37. On March 26, 2025, Megan Schulist, a representative of Wells Fargo Employee Relations, informed Plaintiff via email that the formal warning would be upheld.

38. Around this same time, Plaintiff began experiencing severe anxiety, insomnia, and back pain.

39. On April 1, 2025, Plaintiff visited Dr. Joseph Garcia ("Dr. Garcia"). Dr. Garcia strongly recommended that Plaintiff remove himself from work for 30 days.

40. Plaintiff submitted a request to take short-term disability leave from April 2, 2025 to April 30, 2025, which was approved.

41. Haberman was copied on the correspondence allowing Plaintiff to take leave.

42. On April 2, 2025, Plaintiff directly informed Haberman of Garcia's decision to place him on medical leave until April 30, 2025.

43. Upon his return to work, Dr. Garcia strongly recommended that Plaintiff work from home, stating that it would help Plaintiff improve his mental state and more than likely improve his productivity.

44. On April 22, 2025, Plaintiff informed Haberman that he would be returning to work on May 1, 2025.

45. On the same day, Plaintiff informed Haberman that Dr. Garcia recommended that he work from home.

46. On or about April 29, 2025, Haberman sent Plaintiff the necessary documentation to work from home.

47. On April 30, 2025, Haberman reached out to confirm that Plaintiff would be returning to work on May 1, 2025. Plaintiff confirmed he would.

48. On May 1, 2025, Plaintiff requested a reasonable accommodation to be able to work from home and completed all necessary paperwork required by Wells Fargo.

49. On May 5, 2025, Plaintiff printed the necessary documentation to work from home from the office printer. Plaintiff took the documents to Dr. Garcia for completion.

50. On May 8, 2025, Dr. Garcia signed the necessary paperwork.

51. On May 8, 2025, one week after returning to work from medical leave, Plaintiff was terminated by Wells Fargo.

### COUNT I
### Discrimination and Retaliation on the Basis of Age
### Violation of ADEA, as amended

52. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

53. Plaintiff was born in 1961 and was sixty-three (63) years old at the time of his termination.

54. Defendant treated Plaintiff less favorably than substantially younger employees by terminating his employment and replacing him with much younger employees.

55. Defendant violated the ADEA by discriminating against Plaintiff in whole or in part because of his age and/or in retaliation for his protected activity of opposing age discrimination.

56. Defendant's acts described herein constitute a violation of the Age Discrimination in Employment Act's prohibition against age discrimination.

57. As a proximate result of Defendant's wrongful conduct, Plaintiff has suffered lost wages and benefits, and other damages in an amount to be proven at trial. He is entitled to recover compensatory and liquidated damages in an amount to be proven at trial, including attorneys' fees and costs.

## COUNT II
### Violation of the Americans with Disabilities Act of 1990, as Amended
### 42 U.S.C.§ 12101, et seq

58. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

59. Plaintiff is a "person" and an "employee," and Defendant is an "employer" and a "covered entity" as those terms are defined at 42 U.S.C.§ 12101, et seq.

60. At all relevant times, Plaintiff was a qualified individual with an actual or perceived disability. Prior to Plaintiff's request for an accommodation pertaining to his disability, Plaintiff was performing his job at a level that met his employer's legitimate expectations.

61. Plaintiff notified Defendant of his generalized anxiety, secondary insomnia, and chronic bilateral low back pain.

62. Defendant violated the ADA by failing to attempt to reasonably accommodate Plaintiff in violation of 42 U.S.C. § 12112(b)(5)(A), including but not limited to allowing Plaintiff to work from home, even though such accommodation would not impose an undue hardship on Defendant.

63. Defendant further violated the ADA by failing to engage in the interactive process in good faith in violation of 29 C.F.R. § 1630.2(o)(3).

64. Defendant further violated the ADA by terminating Plaintiff based on an actual or perceived disability in violation of 42 U.S.C. § 12112(a).

65. Plaintiff's discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination without a legitimate business reason.

66. Plaintiff has been damaged by Defendant's violation of the ADA as Plaintiff has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

67. Plaintiff is entitled to his attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

68. Plaintiff is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

### COUNT III
### Violation of FMLA – Interference

69. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

70. Plaintiff is a "person" and an "employee" as defined by 29 U.S.C. § 2611(2)(A).

71. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A).

72. Plaintiff had a right under the FMLA, 29 U.S.C. § 2612(a)(1), to twelve workweeks of leave during any twelve-month period for family and health-related matters.

73. Plaintiff was entitled to FMLA leave because he suffered from a "serious health condition" as defined by 29 U.S.C. § 2611(11) (2018) and 29 C.F.R. § 825.113.

74. Plaintiff exercised his rights under the FMLA, including, but not limited to, taking leave from April 2, 2025 to April 30, 2025.

75. At all relevant times, Plaintiff was in communication with Defendant about the need to take leave under the FMLA due to his serious health condition.

76. Under the FMLA "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 USC § 2615 (a)(1). Additionally, under the regulations, "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." CFR § 825.220.

77. To establish an unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) he was an eligible employee; (2) his employer was covered by the statute; (3) he was entitled to leave under the FMLA; (4) he gave his employer adequate notice of his intention to take leave; and (5) the employer denied his FMLA benefits to which he was entitled.

78. Actions that constitute "interfering with an employee's FMLA rights include refusing to authorize FMLA leave; discouraging an employee from using such leave; avoiding responsibilities under FMLA; and using the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." Prejudice exists if "compensation and benefits [are] lost 'by reason of the violation,' 29 U.S.C. § 2617(a)(1)(A)(i)(I),…other monetary losses are sustained 'as a direct result of the violation,' 29 U.S.C. § 2617(a)(1)(A)(i)(II), "or the employee is denied "employment, reinstatement, [or]

promotion, 29 U.S.C. § 2617(a)(1)(B)."

79. Unlike discrimination claims, FMLA interference claims do not require proof of discriminatory intent.

80. In doing the acts alleged herein, specifically terminating Plaintiff one week after returning from FMLA leave, Defendant interfered with Plaintiff's FMLA rights, 29 C.F.R. § 825.220(c). Defendant effectively did not restore Plaintiff to his current position because it terminated him from that position.

81. Defendant's negative or willful acts and consequences have had a chilling effect on the exercise of his FMLA rights.

82. Defendant's willful acts have caused Plaintiff to suffer economic losses. This intentional, reckless, and/or willful act by the part of Defendant constitutes a violation of Plaintiff's statutory rights under the FMLA.

83. By reason of Defendant's actions, the Plaintiff is entitled to all legal, monetary liquidated and equitable remedies under the FMLA, including her attorney's fees, plus interest.

## COUNT IV
## Violation of FMLA – Retaliation

84. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

85. Defendant was well aware that Plaintiff had suffered a qualifying event under FMLA.

86. Plaintiff is a "person" and an "employee" as defined by 29 U.S.C. § 2611(2)(A).

87. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A).

88. Plaintiff had a right under the FMLA, 29 U.S.C. § 2612(a)(1), to twelve workweeks of leave during any twelve-month period for family and health-related matters.

89. Plaintiff was entitled to FMLA leave because he suffered from a "serious health condition" as defined by 29 U.S.C. § 2611(11) (2018) and 29 C.F.R. § 825.113.

90. Plaintiff exercised his rights under the FMLA, including, but not limited to, taking leave from April 2, 2025 to April 30, 2025.

91. Under the FMLA it is illegal for an employer to discharge or discriminate in any manner, against an individual for opposing any practice made unlawful under the FMLA. See 29 U.S.C § 2615 (a)(2). The anti-retaliation provision prohibits "using the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."

92. To establish a claim for FMLA retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action.

93. In doing the acts alleged herein, specifically terminating Plaintiff one week after returning from FMLA leave, Defendant retaliated against Plaintiff for exercising his FMLA rights, 29 U.S.C § 2615 (a)(2).

94. Defendant effectively did not restore Plaintiff to his current position because it terminated him from that position.

95. Because of the close proximity of the adverse actions, it creates an inference of retaliation and a causal connection that would dissuade a reasonable employee from filing an FMLA claim.

96. Defendant's willful acts have caused Plaintiff to suffer economic losses.

97. This intentional, reckless, and/or willful act by the part of Defendant constitutes a violation of Plaintiff's statutory rights under the FMLA.

98. By reason of Defendant's actions, the Plaintiff is entitled to all legal, monetary, liquidated, and equitable remedies under the FMLA, including her attorney's fees, plus interest.

## COUNT V
## Wrongful Discharge in Violation of Public Policy

99. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

100. Defendant employed at least fifteen (15) employees at all relevant times.

101. Defendant violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1, et seq. by terminating Plaintiff because of Plaintiff's age, disability and/or perceived disability.

102. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

103. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

104. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

1. An Order awarding Plaintiff damages for Defendants' violation of the Family Medical Leave Act, including backpay, lost wages, employment benefits, liquidated damages and any other compensation denied or lost because of Defendant's violation of the FMLA;

2. An Order awarding Plaintiff damages for Defendant's violation of the ADA, including backpay, front pay, lost employment benefits, and any other compensation denied or lost because of Defendant's violation of the ADA;

3. An Order awarding Plaintiff damages for Defendant's violation of the Age Discrimination in Employment Act, including backpay, lost wages, employment benefits, liquidated damages and any other compensation denied or lost because of Defendant's violation of the ADEA;

4. An Order awarding Plaintiff compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

5. An Order awarding Plaintiff punitive damages under N.C. Gen. Stat. § 1D-115 in an amount to be proven at trial;

6. An Order awarding Plaintiff the costs of this action;

7. An Order awarding Plaintiff reasonable attorneys' fees;

8. An Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

9. An Order granting any other necessary or appropriate relief to which Plaintiff is entitled under the law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

> /s/ L. Michelle Gessner
> L. Michelle Gessner, NCSB#26590
> GESSNER LAW, PLLC
> 602 East Morehead
> Charlotte, North Carolina 28202
> Tel: (704) 234-7442
> Email: michelle@mgessnerlaw.com
> *Attorney for Plaintiff*